1

2

3

4

5

6                    IN THE UNITED STATES DISTRICT COURT

7                    FOR THE EASTERN DISTRICT OF CALIFORNIA

8   MARINA WEAHUNT,

9                Plaintiff,              CIV. NO. S-10-2299 KJM GGH PS

10          vs.

11  CALIFORNIA RECONVEYANCE
    COMPANY,
12
                 Defendant.             FINDINGS AND RECOMMENDATIONS
13  _____/

14          This purported diversity action, originally filed on August 27, 2010,[1] was referred

15  to the undersigned pursuant to E.D. Cal. L.R. 302(c)(21).  Plaintiff has paid the filing fee and is

16  proceeding pro se with her original complaint.

17          Currently pending before the court is defendant California Reconveyance

18  Company's ("CRC") motion to dismiss plaintiff's complaint pursuant to Fed. R. Civ. P. 12(b)(6).

19  (Dkt. No. 27.)  Plaintiff filed an opposition to the motion.  (Dkt. No. 32.)[2]  Subsequently, the

20  _____

21          [1] This case was inactive for an extensive period of time in 2011.  After the clerk entered
    defendant's default on January 24, 2011 (dkt. no. 13), plaintiff took no action until the court on
22  November 21, 2011 ordered plaintiff to file a motion for default judgment.  (Dkt. No. 14.)  Upon
    review of plaintiff's subsequent motion for default judgment, the court determined that defendant
23  was not properly served with process.  Accordingly, the court denied the motion without
    prejudice, set aside the clerk's entry of default, and ordered plaintiff to complete proper service
24  of process on defendant.  (See Dkt. No. 19.)  Thereafter, defendant appeared in the action and
    filed the instant motion to dismiss.  (Dkt. Nos. 23, 27.)

25          [2] On March 20, 2012, plaintiff filed a motion for an extension of time to file an
    opposition, which the court granted on March 22, 2012.  (Dkt. Nos. 30, 31.)  Plaintiff then timely
26  filed her opposition on April 16, 2012.  (Dkt. No. 32.)

                                            1

1   motion was submitted on the record without oral argument.  (Dkt. No. 34.)  After considering the

2   papers in support of and in opposition to the motion, the court's record in this matter, and the

3   applicable law, the court now FINDS AS FOLLOWS:

4   BACKGROUND

5           The background facts are taken from the operative complaint, unless otherwise

6   noted.  On December 1, 2006, plaintiff executed a promissory note in the amount of $417,000.00

7   secured by a deed of trust on her real property at 4321 Palacio Way, Fair Oaks, California 95628.

8   (See Complaint, Dkt. No. 1 ["Compl."] at 1; Defendant's Request for Judicial Notice, Dkt. No.

9   28 ["RJN"], Ex. A.)[3]  The deed of trust identifies Marina L. Weahunt as the borrower;

10  Washington Mutual Bank as the lender; and CRC as the trustee.  (RJN, Ex. A.)  The loan was

11  subsequently assigned, and when plaintiff defaulted on the loan, CRC, upon instruction of the

12  beneficiary at the time, JP Morgan Chase Bank, recorded a Notice of Default and Election to Sell

13  Under Deed of Trust on May 5, 2010.  (RJN, Ex. B.)  When the default was not cured, CRC

14  recorded a Notice of Trustee's Sale on August 9, 2010, noticing the sale for August 30, 2010.

15  (RJN, Ex. C.)

16          Thereafter, on August 27, 2010, plaintiff commenced this action and filed motions

17  for a temporary restraining order ("TRO") and preliminary injunction to prevent foreclosure.

18  (Dkt. Nos. 1-3.)  That same day, the district judge issued a minute order directing plaintiff to

19  comply with the requirements of E.D. Cal. L.R. 231.  (Dkt. No. 7.)  When plaintiff failed to do

20  so, the motion for a TRO was denied as procedurally defective, and the motion for a preliminary

21  injunction was stricken as procedurally defective.  (Dkt. Nos. 8, 9.)  Subsequently, on March 4,

22  2011, the subject property was sold at a trustee's sale to the foreclosing beneficiary, JP Morgan

23

24          [3] The court may take judicial notice of the deed of trust, because it is a public record
    whose accuracy cannot reasonably be questioned.  See Fed. R. Evid. 201(b); Mack v. South Bay
25  Beer Distributors, 798 F.2d 1279, 1282 (9th Cir. 1986), abrogated on other grounds, Astoria Fed.
    Sav. Etc. v. Solimino, 501 U.S. 104 (1991); see also Lee v. City of Los Angeles, 250 F.3d 668,
26  688-89 (9th Cir. 2001).

1  Chase Bank, and a Trustee's Deed Upon Sale was recorded on March 11, 2011.  (RJN, Ex. D.)

2         The allegations in plaintiff's complaint are vague and at times confusing.

3  However, it appears that plaintiff alleges various irregularities and fraudulent activities involved

4  in the loan origination process.  For example, plaintiff alleges that various "defendants" failed to

5  provide her with proper and timely notices and disclosures prior to closing; disregarded and

6  deviated from proper underwriting standards; created a condition of stress to induce her to sign

7  documents at closing that she did not read and fully understand; maliciously induced her to enter

8  into a predatory loan agreement, which they knew she could not afford; provided a property

9  appraisal with a falsely stated price; charged false fees at settlement; and used the false fees to

10 compensate plaintiff's agents to induce them to breach their fiduciary duty to plaintiff.

11        Although plaintiff makes somewhat different allegations regarding unidentified

12 lender(s), agent(s), appraiser(s), trustee(s), and sometimes the "defendants" collectively, she

13 contends that they are all liable for the acts of their co-conspirators based on their involvement in

14 a fraudulent scheme.  Plaintiff claims that, as a result of the above-mentioned violations, the

15 mortgage transaction is null and void.  Plaintiff further alleges that "defendants" lacked standing

16 to pursue foreclosure proceedings, because they failed to produce the original note and document

17 the chain of custody of the deed of trust.  She requests rescission of the loan contract, quiet title

18 to the property, injunctive relief, and monetary damages, along with attorneys' fees and costs.

19        Even though plaintiff's causes of action are scattered throughout the complaint,

20 the complaint, liberally construed, purports to state federal causes of action for violations of the

21 Truth In Lending Act ("TILA"); the Home Ownership and Equity Protection Act ("HOEPA");

22 the Real Estate Settlement Procedures Act ("RESPA"); and 15 U.S.C. § 45 et seq. (the Federal

23 Trade Commission Act).  It also contains various state law causes of action, including quiet title,

24 unjust enrichment, fraud, breach of fiduciary duty, negligence, negligence per se, breach of the

25 implied covenant of good faith and fair dealing, and intentional infliction of emotional distress.

26 \\\\\

1   Plaintiff does not specify the basis for this court's subject matter jurisdiction over

2   the action.  Both plaintiff and CRC appear to be citizens of California,[4] thereby defeating

3   diversity jurisdiction.  However, because plaintiff's complaint includes federal claims, the court

4   will construe the complaint as invoking the court's federal question jurisdiction pursuant to 28

5   U.S.C. § 1331.

6   DISCUSSION

7   In considering a motion to dismiss under Rule 12(b)(6) for failure to state a claim

8   upon which relief can be granted, the court must accept as true the allegations of the complaint in

9   question, Erickson v. Pardus, 551 U.S. 89, 94 (2007), and construe the pleading in the light most

10  favorable to the plaintiff, see Scheuer v. Rhodes, 416 U.S. 232, 236 (1974).  However, to avoid

11  dismissal for failure to state a claim, a complaint must contain more than "naked assertions,"

12  "labels and conclusions" or "a formulaic recitation of the elements of a cause of action."  Bell

13  Atlantic Corp. v. Twombly, 550 U.S. 544, 555-57 (2007).  In other words, "[t]hreadbare recitals

14  of the elements of a cause of action, supported by mere conclusory statements do not suffice."

15  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009).  Furthermore, a claim upon which the court can

16  grant relief must have facial plausibility.  Twombly, 550 U.S. at 570.  "A claim has facial

17  plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

18  inference that the defendant is liable for the misconduct alleged."  Iqbal, 129 S. Ct. at 1949.

19  Federal Pleading Standards

20  Fed. R. Civ. P. 8(a)(2) provides that a complaint must contain "a short and plain

21  statement of the claim showing that the pleader is entitled to relief...."  As an initial matter, the

22  court agrees with CRC that plaintiff's complaint does not comply with federal pleading

23  standards.  A substantial portion of the complaint essentially involves an indictment of the real

24

25   [4] Plaintiff lists her current address as a P.O. Box number in Beverly Hills, California.
26  Plaintiff also provides a Chatsworth, California address for CRC, which matches the address in
    the records of the California Secretary of State.  See http://kepler.sos.ca.gov/

4

1   estate and mortgage banking industry.  Other portions of the complaint appear to have been

2   copied and pasted from briefs in other cases, given that it contains references to a motion to

3   dismiss and entities not even involved in the loan transaction at issue, such as a loan servicer

4   named EMS.  (See Compl. at 23, 28.)

5          Furthermore, the complaint involves a significant amount of impermissible

6   shotgun pleading.  "Shotgun pleadings are pleadings that overwhelm defendants with an unclear

7   mass of allegations and make it difficult or impossible for defendants to make informed

8   responses to the plaintiff's allegations."  See Sollberger v. Wachovia Securities, LLC, 2010 WL

9   2674456, at *4 (C.D. Cal. Jun. 30, 2010); see also McHenry v. Renne, 84 F.3d 1172, 1179 (9th

10  Cir. 1996) (holding that "[p]rolix, confusing complaints...impose unfair burdens on litigants and

11  judges.")  Although CRC is the only named defendant, plaintiff alleges a variety of conduct

12  attributed to various unidentified persons and entities, which she refers to collectively with CRC

13  as "defendants."  The complaint fails to clearly identify what conduct is alleged as to CRC

14  specifically.  Plaintiff also includes, scattered throughout the complaint, references to a large

15  number of statutes that were allegedly violated without pleading the elements of the asserted

16  causes of action or factual allegations in support of those elements.

17          Thus, plaintiff's complaint does not contain  "a short and plain statement of the

18  claim" as required by Fed. R. Civ. P. 8(a)(2).  At the very least, dismissal with leave to amend

19  would be warranted on this basis.  Nevertheless, in the interests of judicial efficiency and because

20  the court concludes that dismissal is warranted for more substantive reasons, the court proceeds

21  to an analysis of plaintiff's claims pursuant to Fed. R. Civ. P. 12(b)(6).

22          Federal Causes of Action

23          As noted above, plaintiff's complaint purports to state federal causes of action for

24  violations of TILA, HOEPA, RESPA, and the Federal Trade Commission Act.  In her opposition

25  to the instant motion, plaintiff also suggests for the first time that she has a claim against CRC

26  for violation of the federal Fair Debt Collection Practices Act ("FDCPA").  However, for the

5

1   reasons discussed below, plaintiff fails to state a claim upon which relief can be granted under
2   any of these statutes.

3                                    *TILA and HOEPA*

4          Any claim against CRC premised on alleged violations of TILA fails because
5   CRC is merely a trustee under the Deed of Trust.  The only entities that can be liable for TILA
6   violations are the original creditor and assignees of that creditor.  See 15 U.S.C. § 1640 ("With
7   respect to any failure to make disclosures...liability shall be imposed only upon the creditor
8   required to make disclosure"); 15 U.S.C. § 1641 ("any civil action for a violation...which may be
9   brought against a creditor may be maintained against any assignee of such creditor only if the
10  violation...is apparent on the face of the disclosure statement").  CRC, as trustee under the Deed
11  of Trust, is neither a creditor nor an assignee of the creditor.  See Hargis v. Washington Mut.
12  Bank, 2011 WL 724390, at *2 (N.D. Cal. Feb. 22, 2011); Vogan v. Wells Fargo Bank, 2011 WL
13  5826016, at *4 (E.D. Cal. Nov. 17, 2011) (noting that TILA does not apply to the trustee of a
14  deed of trust due to the trustee's limited role and lack of beneficial interest under California law);
15  Guerrero v. Citi Residential Lending, Inc., 2009 WL 926973, at *4 (E.D. Cal. Apr. 3, 2009)
16  (accord).

17         "HOEPA is an amendment to TILA, designed to 'combat predatory lending,'
18  which applies only to certain high cost loans."  Pedersen v. Greenpoint Mortg'g Funding, Inc.,
19  2011 WL 3818560, at *5 (E.D. Cal. Aug. 29, 2011) (citing In re First Alliance Mortg'g Co., 471
20  F.3d 977, 984 n.1 (9th Cir. 2006)).  Again, because CRC is not a creditor, it can have no liability
21  under HOEPA.  See e.g. Bonner v. Redwood Mortg'g Corp., 2010 WL 1267069, at *4 (N.D. Cal.
22  Mar. 29, 2010); Castro v. Executive Trustee Services, LLC, 2009 WL 438683, at *8 (D. Ariz.
23  Feb. 23, 2009).

24         Additionally, it appears that plaintiff's claims under TILA and HOEPA are time
25  barred.  Under 15 U.S.C. § 1635(f), "[a]n obligor's right of rescission shall expire three years
26  after the date of consummation of the transaction...."  "Consummation means the time that a

consumer becomes contractually obligated on a credit transaction."  12 C.F.R. § 226.2(a)(13); <u>see</u>
<u>also</u> <u>King v. State of California</u>, 784 F.2d 910, 913 (9th Cir. 1986) (holding that TILA claim for
rescission of home loan was barred by the three-year absolute limitation on rescission actions set
out in 15 U.S.C. § 1635(f)).  Under 15 U.S.C. § 1640(e), if the borrower seeks damages based on
TILA and HOEPA violations, she must file her action within one year.  <u>Pedersen</u>, 2011 WL
3818560, at *5.  The limitations period for purposes of 15 U.S.C. § 1640(e) also runs from the
date of consummation of the transaction.  <u>King</u>, 784 F.2d at 915.  Here, plaintiff executed the
note secured by the deed of trust on December 1, 2006 and did not bring the instant action until
August 27, 2010.  Accordingly, plaintiff's rescission and damages claims under TILA and
HOEPA are time barred.

Furthermore, the doctrine of equitable tolling does not save plaintiff's claims here.
First, the three-year limitations period for rescission is absolute and not subject to equitable
tolling.  <u>King</u>, 784 F.2d at 913; <u>Miguel v. Country Funding Corp.</u>, 309 F.3d 1161, 1164 (9th Cir.
2002).  Second, although it is true that, for damages claims under 15 U.S.C. § 1640(e), "equitable
tolling may, in the appropriate circumstances, suspend the limitations period until the borrower
discovers or had reasonable opportunity to discover the fraud or nondisclosures," <u>King</u>, 784 F.2d
at 915, plaintiff fails to allege any facts supporting the application of equitable tolling in this
case.  Apart from the alleged nondisclosures themselves and plaintiff's contentions that she
trusted "defendants" as professionals, plaintiff does not allege any affirmative steps of
concealment.  Nothing prevented plaintiff from comparing the loan documentation with TILA
and HOEPA's requirements.  <u>See</u> <u>Hubbard v. Fidelity Federal Bank</u>, 91 F.3d 75, 79 (9th Cir.
1996) ("nothing prevented Hubbard from comparing the loan contract, Fidelity's initial
disclosures, and TILA's statutory and regulatory requirements").  In any event, even if plaintiff
could successfully invoke equitable tolling, her TILA and HOEPA claims are fatally flawed for
the other reasons discussed above.

\\\

1    Therefore, plaintiff's TILA and HOEPA claims should be dismissed.  Because

2 these claims cannot be cured by further amendment, they should be dismissed with prejudice.

3                                              *RESPA*

4    Any RESPA claim against CRC is also devoid of merit.  RESPA requires that

5 borrowers be provided with a standard disclosure form at or before the "settlement" of a

6 mortgage loan transaction.  12 U.S.C. § 2603.  Additionally, RESPA prohibits the receipt of

7 kickbacks and referral fees in connection with a mortgage loan transaction.  12 U.S.C. § 2607.

8 RESPA also requires that lenders and loan servicers make certain disclosures and

9 communications to the borrower regarding the servicing of a mortgage loan.  12 U.S.C. § 2605.

10    Plaintiff's allegations regarding lack of disclosures prior to closing, as well as

11 false settlement fees and kickbacks, plainly do not relate to CRC, because as the trustee under the

12 deed of trust, CRC had no involvement in the origination of the loan.  Also, there is no private

13 right of action for violations of 12 U.S.C. § 2603's requirements.  Lingad v. Indymac Federal

14 Bank, 682 F. Supp. 2d 1142, 1151 (E.D. Cal. 2010); Bloom v. Martin, 865 F. Supp. 1377, 1384

15 (N.D. Cal. 1994).  Furthermore, because CRC is not a lender or loan servicer, it can also have no

16 liability under 12 U.S.C. § 2605.  See Lingad, 682 F. Supp. 2d at 1151 ("Without alleging that

17 MortgageIT was a lender or loan servicer for the purposes of Section 2605, Plaintiff's claim

18 cannot survive MortgageIT's dismissal motion.")  Moreover, any RESPA violation is barred by

19 the applicable statute of limitations.  12 U.S.C. § 2614 (specifying that 3-year and 1-year

20 limitation periods apply to actions under sections 2605 and 2607 respectively).  As noted above,

21 plaintiff has failed to plead any facts suggesting that equitable tolling is appropriate.

22    Therefore, plaintiff's RESPA claim should also be dismissed.  As further

23 amendment would be futile, the claim should be dismissed with prejudice.

24                              *Federal Trade Commission Act*

25    Plaintiff alleges, in conclusory fashion, that "[i]n the manner in which Defendants

26 have carried on their business enterprises, they have engaged in a variety of unfair and unlawful

1   business practices prohibited by *15 USC Section 45* et seq. (Deceptive Practices Act).  Such

2   conduct comprises a pattern of business activity within the meaning of such statutes, and has

3   directly and proximately caused Petitioner to suffer economic and non-economic harm and

4   detriment...."  (Compl. at 17-18.)

5           "Section 5 of the [Federal Trade Commission Act] prohibits 'unfair or deceptive

6   acts or practices in or affecting commerce.'"  <u>F.T.C. v. Medicor LLC</u>, 217 F. Supp. 2d 1048, 1053

7   (C.D. Cal. 2002) (citing 15 U.S.C. § 45(a)(1)).  However, the Federal Trade Commission Act

8   does not provide individuals with a private cause of action.  <u>See</u> <u>Carlson v. Coca-Cola Co.</u>, 483

9   F.2d 279, 280 (9th Cir. 1973); <u>Gomez v. Wachovia Mortg'g Corp.</u>, 2010 WL 291817, at *5

10  (N.D. Cal. Jan. 19, 2010).  Accordingly, this claim should also be dismissed with prejudice.

11                              *FDCPA*

12          In her opposition to the instant motion, plaintiff contends that she has a claim for

13  violation of the federal FDCPA against CRC.  She states that, on February 13, 2010, she sent a

14  letter to "Defendant" demanding that it validate the debt and its standing to collect the debt from

15  plaintiff.  She claims that "Defendant" failed to validate the debt and was therefore estopped

16  from further collection.  Nevertheless, "Defendant" made demand on plaintiff for payment of the

17  alleged debt and prosecuted the foreclosure action in violation of the FDCPA.  She further states

18  that "Defendant" used false, deceptive, and misleading representations or means to collect the

19  alleged debt by misrepresenting the character, amount, and legal status of the debt and by

20  threatening to take action against plaintiff that could not legally be taken.

21          "The FDCPA was enacted to eliminate abusive debt collection practices by debt

22  collectors, to insure that those debt collectors who refrain from using abusive debt collection

23  practices are not competitively disadvantaged, and to promote consistent State action to protect

24  consumers against debt collection abuses."  <u>Izenberg v. ETS Services, LLC</u>, 589 F. Supp. 2d

25  1193, 1198 (C.D. Cal. 2008).  "As a threshold matter, liability cannot attach under the FDCPA

26  unless the defendant is a debt collector, trying to collect a debt."  <u>Gonzalez v. CNA Foreclosure</u>

1   Service, Inc., 2011 WL 2580681, at *2 (S.D. Cal. Jun. 29, 2011).

2         Here, plaintiff fails to show that CRC was a debt collector trying to collect a debt

3   for purposes of the FDCPA.  As an initial matter, the above-referenced February 13, 2010 letter

4   requesting validation of the debt, attached to the opposition as Exhibit A, is in fact a notice that

5   plaintiff sent to JPMorgan Chase Bank, the beneficiary of the deed of trust at the time of the

6   foreclosure.  Additionally, the "demand" made on plaintiff, attached to the opposition as Exhibit

7   B, is a copy of the Notice of Trustee's Sale recorded by CRC.  Therefore, the only purported

8   "debt collection" activities at issue are the steps CRC took to complete the non-judicial

9   foreclosure process, i.e. recording the notice of default and the notice of sale, and conducting the

10   trustee sale.  As one federal district court in California recently observed:

> While the Ninth Circuit Court of Appeals has held that providing
> notice of a pending foreclosure sale is not a debt collection activity
> under the FDCPA, *Santoro v. CTC Foreclosure Serv.*, 12 Fed.
> App'x 476, 480 (9th Cir. 2001), it has yet to decide whether the act
> of foreclosing pursuant to a deed of trust is a form of debt
> collection.  Other circuit courts have reached diverging opinions
> about the applicability of the FDCPA in the foreclosure context.
> *Compare Perry v. Stewart Title Co.*, 756 F.2d 1197, 1208 (5th Cir.
> 1985), *reh'g granted in part and denied in part*, 761 F.2d 237 (5th
> Cir. 1985) (holding that mortgagees are not debt collectors under
> the FDCPA) *with Wilson v. Draper & Goldberg, P.L.L.C.*, 443
> F.3d 373, 376-377 (4th Cir. 2006) (holding that a trustee sale is a
> debt collection under the FDCPA).  District courts in the Ninth
> Circuit have generally concluded that "foreclosing on a property
> pursuant to a deed of trust is not a debt collection within the
> meaning of the [Rosenthal Fair Debt Collection Practices Act] or
> the FDC[P]A."  *Gamboa v. Trustee Corps.*, 2009 WL 656285 at *4
> (N.D. Cal.); *Landayan v. Washington Mut. Bank*, 2009 WL
> 3047238 at *3 (N.D. Cal.) (dismissing plaintiff's FDCPA claim
> because "foreclosing on a deed of trust does not invoke the
> statutory protections of the FDCPA"); *Jozinovich v. JP Morgan
> Chase Bank, N.A.*, 2010 WL 234895 at *6 (N.D. Cal.); *Izenberg v.
> ETS Servs., LLC*, 589 F. Supp. 2d 1193, 1199 (C.D. Cal. 2008);
> *Ines v. Countrywide Home Loans, Inc.*, 2008 WL 4791863 at *2
> (S.D. Cal.); *Hulse v. Ocwen Fed. Bank, FSB*, 195 F. Supp. 2d
> 1188, 1204 (D. Or. 2002) ("Foreclosing on a trust deed is distinct
> from the collection of the obligation to pay money.").

25   Garfinkle v. JPMorgan Chase Bank, 2011 WL 3157157, at *3 (N.D. Cal. Jul. 26, 2011).  The

26   Garfinkle court concluded that neither notice of a trustee's sale nor the sale itself falls within the

1    scope of the FDCPA.  Id.

2              This court agrees with Garfinkle and the vast majority of other California federal

3    district courts that foreclosure on a property pursuant to a deed of trust is not debt collection for

4    purposes of the FDCPA.  See also Salazar v. Trustee Corps, 2009 WL 690185, at *6 (S.D. Cal.

5    Mar. 12, 2009); Gonzalez, 2011 WL 2580681, at **3-5.  As another court explained:

6              Foreclosing on a trust deed is distinct from the collection of the
               obligation to pay money.  The FDCPA is intended to curtail
7              objectionable acts occurring in the process of collecting funds from
               a debtor.  But, foreclosing on a trust deed is an entirely different
8              path.  Payment of funds is not the object of the foreclosure action.
               Rather, the lender is foreclosing its interest in the property....
9              Foreclosure by the trustee is not the enforcement of the obligation
               because it is not an attempt to collect funds from the debtor.
10

11   Quintero Family Trust v. Onewest Bank, 2010 WL 2618729, at *4 (S.D. Cal. June 25, 2010).

12   Plaintiff's reliance on case law to the contrary outside the Ninth Circuit and California is not

13   persuasive, especially given the limited authority that a trustee under a deed of trust has under

14   California law.  See Heritage Oaks Partners v. First American Title Ins. Co., 155 Cal. App. 4th

15   339, 345 (2007) (holding that the trustee's "only duties are: (1) upon default to undertake the

16   steps necessary to foreclose the deed of trust; or (2) upon satisfaction of the secured debt to

17   reconvey the deed of trust.").

18             In this case, CRC, pursuant to the request of the beneficiary of the deed of trust,

19   performed its duties under the deed of trust and the applicable California statutes by recording

20   the notice of default and the notice of sale, and conducting the trustee sale.  There is no

21   indication that it otherwise collected money or attempted to collect money from plaintiff.  As

22   such, CRC was not a debt collector attempting to collect a debt for purposes of the FDCPA.

23   Accordingly, leave to amend plaintiff's complaint to add a FDCPA claim would be futile.

24                                    *Conspiracy*

25             Plaintiff suggests throughout the complaint that all "defendants" are liable for the

26   acts of their co-conspirators based on their involvement in a fraudulent scheme.  However, there

                                              11

1    are no facts pled even remotely suggesting that CRC had any involvement in the origination or

2    servicing of the loan, nor that there was an agreement between CRC and any other person to

3    violate plaintiff's federal rights.  Thus, to the extent that plaintiff suggests that CRC is somehow

4    liable under any of the above-mentioned federal statutes based on the actions of other

5    unidentified persons, that argument is patently frivolous.

6                              State Law Causes of Action

7            As there are no federal claims remaining, this court declines to exercise

8    supplemental jurisdiction over plaintiff's possible state law claims.  See 28 U.S.C. § 1367(c)(3)

9    ("The district courts may decline to exercise supplemental jurisdiction over a claim...if – the

10   district court has dismissed all claims over which it has original jurisdiction"); see also Acri v.

11   Varian Associates, Inc., 114 F.3d 999, 1000-01 (9th Cir. 1997) (" 'in the usual case in which all

12   federal-law claims are eliminated before trial, the balance of factors . . . will point toward

13   declining to exercise jurisdiction over the remaining state-law claims' "), quoting

14   Carnegie-Mellon University v. Cohill, 484 U.S. 343, 350 n.7 (1988).  Here, given that the only

15   federal claims have dropped out in the pleadings stage of the litigation, dismissal of the state law

16   claims without prejudice is appropriate.

17   CONCLUSION

18           Accordingly, for the reasons outlined above, IT IS HEREBY RECOMMENDED

19   that:

20           1.  CRC's motion to dismiss (dkt. no. 27) be granted;

21           2.  Plaintiff's causes of action for violations of TILA, HOEPA, RESPA, and the

22   Federal Trade Commission Act, 15 U.S.C. § 45 et seq. be dismissed with prejudice;

23           3.  Plaintiff's remaining state law causes of action be dismissed without prejudice;

24           4.  Judgment be entered for CRC; and

25           5.  The Clerk of Court be directed to close this case.

26   \\\

1     These findings and recommendations are submitted to the United States District

2   Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen

3   (14) days after being served with these findings and recommendations, any party may file written

4   objections with the court and serve a copy on all parties.  Such a document should be captioned

5   "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

6   shall be served and filed within seven (7) days after service of the objections.  The parties are

7   advised that failure to file objections within the specified time may waive the right to appeal the

8   District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

9   DATED: May 4, 2012

                                  /s/ Gregory G. Hollows
10                           UNITED STATES MAGISTRATE JUDGE

11

12  GGH/wvr
    weahunt.2299.mtd.fr.wpd

13

14

15

16

17

18

19

20

21

22

23

24

25

26